UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/21

UNITED STATES OF AMERICA

V.

17 CR 214 (CM)

RASHEA JONES,

Defendant.

——————————————————————————x

DECISION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

On April 4, 2017, Rashea Jones pleaded guilty to one count of robbery, in violation of

18 U.S.C. § 1951. On August 8, 2017, the Court sentenced Jones to 72 months'

imprisonment. Jones is currently serving his sentence in United States Penitentiary Canaan

("Canaan USP"), in Waymart, Pennsylvania. According to the Bureau of Prisons ("BOP"),

he is scheduled to be released May 29, 2022.

Before the Court is Jones' motion for compassionate release filed pursuant to 18

U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391. Jones

asks to be release immediately in light of his obesity, diabetes and high blood pressure

(conditions that the CDC has identified as creating an elevated risk of serious illness from

COVID-19), and the increased likelihood of contracting the virus while incarcerated at

Canaan USP, than if he were at liberty. He argues that he has already served more than 80%

1

of his sentence, he committed the underlying crime as a result of his PTSD, and that he has rehabilitated himself with the help of treatment he has received while incarcerated.

The Government opposes the motion on the grounds that prison records show that Jones has been fully vaccinated and, therefore, at low risk from COVID-19; BOP can provide adequate care for his medical conditions; and in any event the Section 3553(a) factors weigh against release.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] In the past, this Court—and

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

2

many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13

(the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. §

3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling

circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals

for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in

the district court. *United States .v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at \*6 (2d Cir.

Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has

not been updated since the passing of the First Step Act—addressed only sentencing reduction

motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not

constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second

Circuit declared unequivocally that "district courts have discretion to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before [the court] in

---

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)     Medical Condition of the Defendant.—

    (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)     The defendant is—

        (I)       suffering from a serious physical or medical condition,

        (II)     suffering from a serious functional or cognitive impairment, or

        (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What Brooker did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Jones Exhausted his Administrative Remedies in the Bureau of Prisons

On May 6, 2020, Jones submitted a compassionate release request to BOP citing concerns about COVID-19. On May 14, 2020, the warden denied the request.

Contrary to the Government's argument otherwise, Jones's argument here that his diabetes constitutes an extraordinary circumstance does not rely upon changed circumstances that were not presented to the BOP. Jones's initial May 6, 2020 request for compassionate release and June 24, 2020 appeal from the denial thereof, specifically cite his diabetes. *See* June 7 Letter, Ex. D ("Ex. D"), at ECF 14, 16. Moreover, BOP expressly stated that it considered his medical records in denying his application, and Jones's medical records show that his blood sugar levels began spiking before BOP issued its denial. *See* Ex. A at 25 (reflecting blood glucose level of 239 on June 1, 2020, 220 on June 8, 2020, and 283 on June 15, 2020).

Accordingly, Jones has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

4

The Motion Before the District Court

Jones's motion does not meet the statutory standard for release. He argues that he

should be released due to his risk of severe illness from COVID-19, citing his obesity,

type 2 diabetes, and hypertension. He also claims that the BOP is incapable of caring for

his worsening diabetes.

To be sure, each of the conditions Jones cites have been identified by the Centers

for Disease Control as being potential risk factors for serious illness from COVID-19.

However, Jones has received the Pfizer COVID-19 vaccine. *See* Ex. A (excerpt from

defendant's BOP medical records). As several courts have concluded, the risk of COVID-

19 for a vaccinated individual is substantially reduced to the point that a defendant will

typically not be able to demonstrate extraordinary and compelling reasons after he has

been vaccinated. *See, e.g.*, *United States v. Mena*, No. 16 CR. 850 (ER), 2021 WL

2562442, at *3 (S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine

generally counsels against compassionate release based on COVID risk, due to the strong

evidence of the effectiveness of each of the vaccines."); *United States v. Santana*, No. 18-

CR-865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (finding no

extraordinary circumstances due to "the efficacy of the COVID vaccines, and specifically

the Pfizer vaccine" and citing data showing Pfizer vaccine is 94% effective against

COVID-19 hospitalization); *United States v. Orlandez-Gamboa*, No. 99 CR. 654 (CM),

2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021) (finding defendant had failed to

demonstrate extraordinary and compelling circumstances, even though he was in high-

risk age group, because he was "fully vaccinated against COVID-19"). Indeed, recent

data confirms that the COVID-19 vaccines dramatically reduce the risk of death or serious illness from the various variants of COVID-19, even the dreaded Delta Variant.[3]

As for the state of COVID-19 at Canaan USP, even during the latest uptick of COVID cases around the country (mostly attributed to the "Delta" variant), the institution is currently reporting zero inmates testing positive for the virus. *See* BOP COVID-19 Dashboard, https://www.bop.gov /coronavirus/ (last visited September 7, 2021). Moreover, 1,135 of the approximately 1,241 inmates at Canaan (1,176 Inmates at the USP, and 65 Inmates at the Camp) have been fully vaccinated.

Regarding BOP's ability to attend to Jones' diabetes, his medical records indicate that he is receiving regular medical check-ups and needed prescription medication. In his reply, Jones argues that notwithstanding BOP's efforts (namely check-ups and prescription medication), "his diabetes continues to prove unmanageable in the carceral context, and his substantially elevated and regularly spiking blood sugar levels pose a significant risk to his wellbeing, and potentially his life, threatening to send him into a diabetic coma." Jones Reply at 2. "Moreover, and as noted in our June 7 Letter, he has

---

[3] Vaccines in the US are highly effective, including against the Delta variant

- The COVID-19 vaccines approved or authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant. But they are not 100% effective, and some fully vaccinated people will become infected (called a breakthrough infection) and experience illness. For all people, the vaccine provides the best protection against serious illness and death.

- Vaccines are playing a crucial role in limiting spread of the virus and minimizing severe disease. Although vaccines are highly effective, they are not perfect, and there will be vaccine breakthrough infections. Millions of Americans are vaccinated, and that number is growing. This means that even though **the risk of breakthrough infections is low**, there will be thousands of fully vaccinated people who become infected and able to infect others, especially with the surging spread of the Delta variant. Low vaccination coverage in many communities is driving the current rapid surge in cases involving the Delta variant, which also increases the chances that even more concerning variants could emerge.

https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html?s_cid=11504:delta%20variant%20and%20vaccine%20effectiveness:sem.ga:p:RG:GM:gen:PTN:FY21(Emphasis added).

6

begun experiencing severe symptoms, including loss of feeling in his extremities, which Mr. Jones understands, on the basis of advice from BOP medical personnel, may require amputation absent improvement in his condition." *Id*.

Notwithstanding Jones assertion that his diabetes is worsening, he does not identify any particular treatment that is unavailable within the BOP. Indeed, diabetes is among one of the more common maladies among prison inmates in the BOP, and the BOP is well equipped to help Jones control his diabetes. But Jones has to do his part, as well. A note from a medical provider during a check-up indicated "non-compliance with diet" may be contributing factor to his diabetes.

In sum, Jones has failed to demonstrate that his current medical condition and the threat of contracting COVID-19 at the Canaan USP present extraordinary and compelling circumstances warranting his immediate release.

Even if Jones had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction. Principal among those considerations in this case are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1), (2) (A)-(C).

This case is Jones sixteenth criminal conviction. His prior offences include convictions for burglary, assault, battery, weapons possession, and narcotics offenses. The offense he

7

pleaded guilty to in the present case is yet another violent crime— the gunpoint robbery of a cab

driver. As I pointed out at sentencing, the controlling sentencing factor in this case was to protect

society from defendant's dangerous "rage":

> THE COURT: So, we have a mentally unstable person with an extensive criminal
> record in New York City who has stipulated that he had a gun who gets involved in a
> dispute with a cab driver and who escalates it to the point of violence, violence that
> could well have ended in death or serious injury. Fortunately, it did not. That's
> behavior for which you need to be punished whether you have PTSD or not. That's
> behavior from which the public needs to be protected whether you have PTSD or not.
> And that is obviously what moved the probation officer, who rarely recommends a
> sentence at the top end of the guidelines, to recommend to me that I sentence you at
> the top end of the guidelines, that, and your very extensive criminal record. And
> while I appreciate that you managed not to get yourself arrested for some
> considerable period of time after you were finally let out on your last parole
> revocation, three years, a little over three years, and you did some good things in
> your life during that period, for some reason you got ahold of a gun and you decided
> that you could have a gun and then you found occasion to utilize that gun to terrorize
> someone. I have no way of knowing you if you have ever been on the other end of
> the gun, on a wrong end of a gun.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I have been too so I can speak for that victim, I can speak for that cab
> driver with knowledge, not learned from the movies or television. It is a terrifying
> experience and you never really get over it.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You always remember it. So, I'm sorry, sir. I just think that we will all
> be better off if you are committed to the Bureau of Prisons for a substantial period of
> time and if that is in a facility with mental health treatment, which I think is much
> more important than your being in any particular area, so that you can get the help
> that you obviously need and claim to want but not while society is not protected from
> your rage.

ECF Document 27, Sentencing Transcript at 23-24.

The Court proceeded to sentence Jones to 72 months' imprisonment—a middle of the

Guidelines sentence.

Jones argues that he is a new man and cites his disciplinary history while in prison as evidence that he has been rehabilitated. Defendant's Mot. at 13. However, what the records actually show is that Jones was disciplined as recently as May 2020, for threatening another with bodily harm and disruptive conduct, and again in July 2020, for possessing narcotics. Mot. Ex. B. Far from advancing his rehabilitation argument, his prison disciplinary records suggest that the issues that haunted Jones when he committed the underlying crime persist.

So, even if Jones is on the road to rehabilitation (and the Court hopes that is the case), with a projected release date of May 2022, he will be released sometime in early 2022 to a structured BOP community supervision program (halfway house). There he will be able to receive continued counseling for his PTSD and be provided with all the resources necessary for him to transition (hopefully successfully) back into society. It is in society's interest that Jones go through that process.

The motion for compassionate release is denied.

Dated: September 8, 2021

Colleen McMahon
United States District Court Judge

9